BRITISH COLUMBIA INVESTMENT
COMPANY et al., Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION et al., Defendants.

Civ. No. 76–0018–E.

United States District Court,
S. D. California.

Sept. 14, 1976.

Samuel C. Palmer, III, Palmer, Bartenetti & Bennett, Los Angeles, Cal., for plaintiffs.

Frederick S. Fields, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

ENRIGHT, District Judge.

This action seeks broad, equitable relief from the effects of the failure of United States National Bank and alleged misconduct antecedent to the bank's demise. Defendant Federal Deposit Insurance Corporation, in its capacities as a corporation and as receiver for United States National Bank, moves to dismiss the action under Federal Rules of Civil Procedure 12(b)(1), (6) and (7). The motion is granted. However, this decision does not foreclose any party with the requisite standing and without the deficiencies noted herein as pertaining to British Columbia Investment Corporation from asserting negligence claims against the Federal Deposit Insurance Corporation or Comptroller of the Currency. Serious charges have been made against these defendants which should be resolved in an appropriate forum.

█ The complaint in this action seeks declaratory and ancillary relief. Because the requested relief is equitable in nature, the particular facts and circumstances of this case are critical to the resolution of the issues raised by the instant motion to dismiss. In considering this motion the court is mindful that it may be granted only if there is no set of facts which, if proven, will afford plaintiffs relief for their claims. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *McKinney v. DeBord,* 507 F.2d 501 (9th Cir. 1974). The facts set forth below have been drawn from plaintiffs' complaint and are considered true for the purpose of considering this motion.

### I

Plaintiffs to this action are the British Columbia Investment Corporation (BCIC), its subsidiaries and affiliates. Plaintiffs collectively owned approximately 29% of the issued and outstanding shares of United States National Bank (USNB) on the date of its failure, October 18, 1973. The essence of their claim is that they were victims of schemes by the principal shareholder and chairman of the board of directors of the bank, C. Arnholt Smith, to inflate the value of USNB shares by creating fictitious loan transactions and manipulating assets to plaintiffs' detriment. One of the remedies sought in this action is a cancellation of all debts running from plaintiffs to USNB and other defendants.

Defendants are the moving party, Federal Deposit Insurance Corporation (FDIC), in both its corporate and receivership capacities; the Comptroller of the Currency, James E. Smith, in both his capacities as Comptroller and director of FDIC; C. Arnholt Smith; and virtually all of the entities of the corporate matrix established and controlled by C. Arnholt Smith. Absent from the named defendants is the Westgate-California Corporation (Westgate) and many of its subsidiaries. These Smith-controlled entities are in bankruptcy proceedings in this district.[1]

The complaint is a chronology of the construction of the C. Arnholt Smith financial empire, alleging various modes of manipulation, self-dealing and fictitious loans to increase the value of USNB shares. It alleges that the several patterns of alter-ego conduct among the Smith-controlled companies resulted in an accumulation of losses, fictitious debts and questionable assets for plaintiffs and the acquisition of favorable assets and fictitious interest in-

---

1. Before Judge Leland Nielsen of this court are the following bankruptcy proceedings involving Westgate and its subsidiaries: *In re Westgate-California Corporation,* 74–413; *In re Wescal Properties,* 74–414; *In re Tri-County Ranches,* 74–1079; *In re Westgate-California Realty Co.,* 74–1246; *In re West Coast Properties,* 74–2271.

come by USNB from plaintiffs. The complaint further alleges that the "bureaucratic defendants" (FDIC and Comptroller Smith) acquiesced in and promoted these patterns of alter-ego conduct. For example, it charges these defendants with knowingly failing to correct irregularities in USNB transactions in the 1960s and early 1970s, with acquiescing in a 1972 USNB stock offering with knowledge of the bank's impending failure, and with the establishment of a "control group" of five officers and directors of USNB which served to continue the patterns of alter-ego conduct at the direction of these "bureaucratic defendants."

Upon the formal declaration of insolvency of USNB on October 18, 1973, the FDIC assumed the role of receiver for the bank under federal banking law.[2] The FDIC has proceeded to liquidate the bank and collect outstanding debts.[3] In the instant litigation plaintiffs seek a cancellation of debts owed to defendants. Plaintiffs do not tender any of their assets in exchange for excision of these debts; rather, they state that the FDIC should be estopped from enforcing these debts not only because FDIC assisted in promoting the fraudulent schemes that created the debts, but also because the debts were fictitious and plaintiffs never enjoyed the proceeds of the loans.

Plaintiffs filed the instant three-count complaint on January 12, 1976. Count I, for declaratory relief under 28 U.S.C. §§ 2201 and 2202 and for review of agency actions under the Administrative Procedure Act, 5 U.S.C. § 702, seeks a declaration that the defendants acquiesced and/or participated in the fraudulent conduct alleged above. Count II seeks similar review and a declaration that the FDIC is not entitled to enforce debts owed by plaintiffs to defendants, and that plaintiffs are not estopped from asserting defendants' fraud to achieve

a cancellation of plaintiffs' debts. Count III seeks ancillary relief to the declaratory judgments sought in Counts I and II. Briefly, said ancillary relief includes a constructive trust for the assets of all corporations in the C. Arnholt Smith financial empire, the appointment of an independent receiver to administer those assets, an accounting of those assets by a special master, a cancellation of debts running from one Smith-controlled corporation to another, and an injunction prohibiting the disposition of any assets until the independent receiver has been appointed.

II

Thus, the complaint seeks declaratory judgments and equitable relief ancillary to those judgments; it makes no claim for monetary relief. Declaratory relief has been characterized as both "equitable in nature," *Abbott Laboratories v. Gardner*, 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967), and "essentially legal," *Simler v. Conner*, 372 U.S. 221, 223, 83 S.Ct. 609, 611, 9 L.Ed.2d 691 (1963). The hybrid nature of the judgments sought and the specific requests for equitable ancillary relief compels the court to discuss some of its equitable considerations before it treats the issues resolvable on purely legal grounds. First in order, however, is a discussion of plaintiffs' right to bring this action—its standing to sue.

Standing to sue is one element of the Constitution's article III limitation that federal courts may hear only justiciable "cases" or "controversies." A party with standing has been variously described, but the most persistent elucidation in recent times is a plaintiff who alleges "injury in fact" by the action challenged in the complaint. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). The Court recently reworded

**2.** 12 U.S.C. § 1821(c).

**3.** The notes from Westgate to USNB, for example, were the subject of extensive bankruptcy proceedings before Judge Nielsen. (*See* note 1, *supra.* A settlement was reached, after ap-

proximately two years of litigation, affording a cancellation of the Westgate promissory notes in exchange for a transfer of Westgate assets to FDIC. These assets included a substantial block of realty in downtown San Diego.

the description to depict a plaintiff who "has shown injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Given the allegations of the complaint and the relief sought this court must conclude that plaintiffs allege injury in fact, which would be redressed by that relief. Certainly the allegations of alter-ego conduct and the cancellation of their promissory notes to defendants would alone entitle plaintiffs standing to sue.

■ Defendants contend that only creditors or other third parties outside plaintiff corporations have standing to seek a disregard of plaintiffs' corporate entities for the purpose of effecting a consolidation or constructive trust. This contention is not properly addressed to the issue of standing, but rather bears on the substantive issue whether this court should pierce the corporate veils of plaintiffs. In any event, it is apparent that, under California law, a plaintiff may seek disregard of its own corporate entity. *Cooperman v. Unemployment Insurance Appeals Board*, 49 Cal. App.3d 1, 122 Cal.Rptr. 127 (1975). Although that court did not address the issue of standing, it is clear that plaintiff there suffered injury in fact and that disregard of the corporate veil would relieve that injury. This court, however, neither finds nor intimates that such disregard of the corporate veil is proper in the instant case. There are several equitable considerations which would preclude this and other relief.

### III

Equitable defenses raised by defendant in the instant motion include laches and lack of "clean hands." Additionally, defendant contends that the absence of Westgate and some of its subsidiaries would prevent the court from affording complete relief among all entities allegedly victimized by the alter-ego conduct. The court finds these concerns persuasive; however, the court must emphasize from the outset that laches and other equitable considerations are not the only bases of this decision. Other legal considerations will be discussed in Section IV.

■ When a party seeks to invoke the court's powers in equity, as here, it is subject to equitable defenses. The doctrine of laches provides that equity will not aid a plaintiff whose unexcused delay has caused prejudice to the defendant. Its elements are two fold: 1) lack of diligence by the party seeking equitable relief, and 2) resulting prejudice to the party asserting the defense. *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *Lathan v. Brinegar,* 506 F.2d 677, 691–92 (9th Cir. 1974). Both elements are present in the instant case. Plaintiffs' complaint alleges that they were parties to the fictitious loan transactions and manipulation of assets prior to the October 18, 1973 failure of USNB.[4] Post-failure activities of plaintiffs and moving party defendant included negotiation and attempted enforcement of the inter-corporate debt plaintiffs seek to erase through this action.[5] Moreover, plaintiffs must have been aware of related proceedings in this district[6] involving some of the very debts and assets which plaintiffs seek to place under the jurisdiction of this court. Yet, plaintiffs have delayed more than two years after the failure of USNB to pursue this prayer for sweeping relief. Given the scope of the relief for which they pray and the intervening negotiations and settlement involving parties that would be affected by the proposed relief, the court must conclude that plaintiffs did not file this complaint with the diligence required under the circumstances. The resulting prejudice to the moving party is evident. The FDIC has already engaged in extensive proceedings to liquidate USNB and to enforce debts to USNB by plaintiffs and other allegedly Smith-controlled corporations, including Westgate. Accordingly,

---

4. Plaintiffs' Complaint for Declaratory Relief, etc., ¶¶ 77–80.

5. *Id.,* ¶ 173.

6. Footnotes 1 and 3, *supra.*

in addition to the legal reservations expressed below, the court finds that laches bars the imposition of a constructive trust and the other ancillary relief.

■■■ A court may also withhold equitable relief if it determines that a party enters a court of equity without the requisite "clean hands." While perfect conduct is not required, it is apparent that participation in misrepresentations and violations of banking laws are sufficient. See *ESP Fidelity Corp. v. Department of Housing and Urban Development*, 512 F.2d 887 (9th Cir. 1975). It appears from the allegations of the complaint that plaintiffs were participants, as well as victims, in the alleged alter-ego conduct and may have received benefits from the very conduct of which they complain. This concern is another significant factor in this court's declination to grant the full range of equitable relief sought in Count III. This action would be in a different posture if plaintiffs were shareholders and creditors who were not involved in the fraudulent conduct alleged in the complaint.

■■■ The court's final consideration in opposing the equitable prayers for relief is the absence of all necessary parties to fairly effect the relief sought, particularly the constructive trust and cancellation of inter-corporate debts. The court finds that complete relief cannot be afforded among the parties to this action absent Westgate and its subsidiaries, and that joinder of those parties to effect the requested relief is not feasible. Even if the court sitting in bankruptcy proceedings of Westgate and some of its subsidiaries were to grant them leave to appear in the instant action, this court would not consider it feasible or appropriate to disrupt the carefully negotiated settlement between Westgate and FDIC for the former's debts to USNB. Considering the factors delineated in Federal Rule of Civil Procedure 19(b), the court finds that relief rendered in Westgate's absence will not be adequate and that plaintiffs retain other adequate remedies; therefore, the court would additionally dismiss Count III upon plaintiffs' failure to join indispensable parties.

## IV

With these equitable considerations in mind, a discussion of some of the legal issues is now in order. BCIC seeks the removal of FDIC and appointment of an independent receiver, the establishment of a constructive trust and the cancellation of inter-corporate debts among the C. Arnholt Smith-controlled companies. This latter prayer, which would include cancellation of BCIC's debts to USNB, appears to be the principal relief sought by plaintiff in this lawsuit.

■■■ The FDIC argues that BCIC's claim for declaratory relief, particularly as to cancellation of inter-corporate debts, is actually a claim for damages under the Federal Tort Claims Act. Such a claim against the government is barred unless the requirements of 28 U.S.C. §§ 1346, 2671 *et seq.* are satisfied. *Meyer v. Foley*, 234 F.Supp. 732 (S.D.Iowa 1964). Although FDIC's construction of the complaint is reasonable, the court is convinced that BCIC is properly seeking a declaration of its contractual rights of rescission with respect to notes owing to USNB and this is not an action for damages under the Federal Tort Claims Act.

■■■ BCIC alleges in Count I of the complaint that FDIC, in its corporate capacity, was an active participant in the fraudulent schemes by which BCIC's shareholders were deceived in the corporation's dealings with USNB and other Smith-controlled entities. By implication BCIC alleges that this involvement can be a defense to a suit by FDIC, as receiver for USNB, against BCIC. Significant problems are presented by this analysis of BCIC's position. The FDIC, as receiver of an insolvent national bank, stands in the position of the insolvent bank and is required to marshal the assets of the bank for its shareholders and creditors; on the other hand, the FDIC in its usual corporate capacity functions as an insurer and overseer of subject national banks. *FDIC v. Glickman*, 450 F.2d 416,

418 (9th Cir. 1971). Elementary fairness to the insolvent bank's shareholders and creditors dictates that FDIC, when discharging its statutory duty as receiver, not be held responsible for acts of FDIC in its normal corporate capacity.[7]

An additional problem inherent in the requested declaratory relief is whether BCIC will even be permitted to raise defenses it has against USNB in a suit by FDIC, as receiver, to enforce obligations owing from BCIC to USNB. Normally, when a party succeeds to an interest by legal process, as FDIC here, that party takes the interest subject to defenses which its obligors possess against its predecessor in interest. See, California Commercial Code § 3302(3)a. The Supreme Court though has changed this rule with respect to suits by FDIC, as receiver, when the transaction upon which suit is based "was designed to deceive the creditors or the public authority or would tend to have that effect." *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 460, 62 S.Ct. 676, 86 L.Ed. 956 (1941). Public policy thus requires, in suits brought by FDIC on behalf of insolvent national banks, that parties who voluntarily participate in fraudulent schemes likely to deceive bank examiners or creditors be estopped from asserting defenses based on representations or conduct of other participants in the fraud. BCIC argues that the policy upon which the *D'Oench* rule is based is inapplicable here because FDIC, by virtue of its participation in its corporate capacity in the fraudulent scheme, was aware of the misleading transactions and thus the "public authority" referred to in the *D'Oench* decision was in fact not misled. The court is not persuaded by this argument for two reasons. First, the *D'Oench* rule is designed to protect creditors and shareholders of the insolvent bank in addition to the public authority. Public policy is served with respect to good faith creditors by employing the *D'Oench* estoppel doctrine even

though the public authority allegedly was not misled by the questionable transactions. Second, the *D'Oench* rule is applicable even if both the creditors and FDIC were not deceived by the fraud. This is the clear import of the Supreme Court's statement in the *D'Oench* case:

"It would be sufficient in this type of case that the maker lent himself a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank *was or was likely to be misled.*"

315 U.S. at 460, 62 S.Ct. at 681 (emphasis supplied).

The Court thus anticipated application of the estoppel rule both when the public authority "was" actually misled "or was likely to be misled." BCIC, therefore, is estopped from asserting defenses which BCIC may possess based on the alleged fraudulent transactions entered into by BCIC and USNB.

BCIC also seeks the removal of FDIC and the appointment of an independent receiver to manage the assets of C. Arnholt Smith-controlled companies, including USNB. The FDIC, though, is the exclusive statutory receiver of an insolvent national bank. 12 U.S.C. § 1821(c). Plaintiff concedes that FDIC is the exclusive statutory receiver but nevertheless argues that appointing a new receiver to administer the assets of USNB would not constitute the removal of FDIC. The complaint describes the property constituting the proposed constructive trust as including "each and every asset of each and every party hereto."[8] The court cannot conceive how the appointment of an independent receiver to administer "each and every asset" of USNB and the other parties to this litigation would not constitute the removal of FDIC as receiver in contravention of 12 U.S.C. § 1821(c). This court declines to so find and remove the FDIC as receiver.

---

**7.** The very existence of the dual capacities of FDIC, as emphasized in *FDIC v. Glickman,* 450 F.2d 416, 418 (9th Cir. 1971) necessarily indicates that the receiver's constituents, the insolvent bank's shareholders and creditors, not be responsible for alleged wrongdoing done by the corporation acting on behalf of the public.

**8.** ¶ 190.

BCIC asks the court to disregard BCIC's own corporate status and that of the other parties in imposing a constructive trust for the benefit of the bank's shareholders and outside creditors. FDIC contends that the relief sought by BCIC is more in the nature of bankruptcy consolidation than a constructive trust, and the requirements for this type of consolidation are not present. Because BCIC is seeking the joint administration of all the assets of the Smith-controlled companies and the cancellation of the inter-corporate debts based on alter-ego principles, and not merely the imposition of a normal trust for a distinct *res,* it is perhaps more appropriate to characterize the requested relief as a corporate consolidation than a constructive trust. Plaintiff admits that its action does not fall within the traditional framework of a constructive trust and no authority is cited where the relief requested in the instant case has been afforded outside the area of bankruptcy. The Court of Appeals for the Second Circuit noted in *In re Continental Vending Machine Corp.,* 517 F.2d 997, 1000 (1975):

"The power to consolidate is one arising out of equity, enabling a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in order to reach assets for the satisfaction of debts of a related corporation."

See also, *Soviero v. Franklin National Bank,* 328 F.2d 446 (2nd Cir. 1975). The claim for relief here is of an extraordinary nature, involving the restructuring of the receivership of an insolvent national bank and consolidation of approximately one hundred corporations. Given the equitable considerations discussed above, the court cannot grant relief of this nature and magnitude when plaintiff is unable to provide any persuasive authority to effect such a reorganization of assets. Finally, the authority cited by defendant from the bankruptcy area militates against granting the relief sought by plaintiff. The Second Circuit has indicated that bankruptcy consolidation is an unusual remedy which should only be employed in rare circumstances and specifically for the benefit of creditors. *In re Continental Vending Machine Corp.,* supra. BCIC is a debtor, not engaged in bankruptcy proceedings, yet seeking the bankruptcy-oriented relief of corporate consolidation primarily to achieve cancellation of its debts to USNB. The court is also concerned that the requisite unity of interest for piercing the corporate veil and corporate consolidation has not been satisfied in this case. See 1 *Fletcher Cyc. Corp.* § 43 (Perm.Ed.). Nowhere in the complaint is the ownership of BCIC alleged, and paragraph three of the complaint indicates that BCIC owns but 29% of the stock of USNB. It thus appears that only a group of minority shareholders of USNB are parties to this suit and seeking consolidation. Under these circumstances the court declines to find that BCIC has stated a claim for the requested corporate consolidation.

### Conclusion

BCIC has not satisfied the equitable prerequisites for the ancillary relief sought in Count III of the complaint. The court concludes that, given the scope of the relief prayed for and the intervening negotiations and settlement involving parties that would be affected by the proposed relief, laches is a bar here to plaintiffs' requested relief. The complaint indicates that BCIC was a participant in the fraudulent schemes which are the basis for this action, and the court additionally finds that plaintiff does not possess the requisite "clean hands" for a court of equity to award the extraordinary relief sought. As aforementioned, innocent nonparticipants may not be similarly foreclosed in an action for negligence against FDIC and the Comptroller of the Currency.

Apart from these equitable considerations, the court is of the opinion that plaintiffs have failed to state a claim with respect to the merits of the relief sought in Count III of the complaint. FDIC is the exclusive statutory receiver for an insolvent national bank pursuant to 12 U.S.C. § 1821(c) and plaintiffs are thus barred from seeking the appointment of a new receiver. No authority is cited by plaintiffs for the requested corporate consolidation and cancellation of inter-corporate debts,

and the court finds that plaintiffs have failed to state a claim in this regard. As BCIC is not in bankruptcy and consolidation is not sought for the benefit of good faith creditors, a bankruptcy-type consolidation is inappropriate here.

One premise of the declaratory relief sought in both Counts II and III is that BCIC is entitled to raise as a defense to any suit by FDIC, as receiver for USNB, alleged wrongdoing by FDIC in its corporate capacity as insurer. Elementary fairness to the insolvent bank's shareholders and creditors requires that FDIC, when discharging its statutory duty as receiver, not be held responsible for the acts of FDIC in its normal corporate capacity.

In Count II of the complaint, plaintiffs seek a declaration with respect to the applicability to this case of the estoppel doctrine enunciated by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC, supra.* The court finds that plaintiffs were parties to a fraudulent transaction as alleged in the complaint which was likely to deceive the public banking authorities, and accordingly, under the *D'Oench* rule, plaintiffs are estopped to raise their defenses against FDIC as receiver. Even assuming FDIC had prior knowledge of the fraudulent transactions, the *D'Oench* doctrine is still applicable by virtue of public policy in favor of protecting innocent creditors and the precise formulation of the doctrine by the Supreme Court, which includes situations where the public banking authorities were in fact not misled.

In light of the above conclusions with respect to the relief sought in Counts II and III of the complaint, the court finds that there is no case or controversy as to the declaratory relief sought by plaintiffs in Count I. The real dispute alleged to exist in paragraph 177[9] of the complaint no longer exists with respect to FDIC by virtue of the applicability here of the *D'Oench* doctrine and the equitable and legal grounds for dismissal of the relief sought in Count III of the complaint. FDIC, therefore, is also entitled to dismissal as to Count I on the absence of a justiciable case or controversy. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

Accordingly, this motion to dismiss brought by FDIC in its corporate and receivership capacities is hereby granted as to Counts I, II and III.

---

**9.** That paragraph states that a "vigorous and serious dispute" has arisen between the parties due to the alleged fraudulent conduct by defendants. It states further that the "dispute is real and immediate in that defendants are attempting to impose liability upon plaintiffs upon the basis of the inter-company indebtedness . . . ." The court's denial of relief sought in Counts II and III essentially quashes that dispute.