WILLIAM A! CULPEPPER, Judge.
Planters Trust and Savings Bank (hereinafter Planters) brought suit on several promissory notes against Sentry Drill Collar Inspection, Inc. (hereinafter Sentry) and also against Russell J. Devillier and Lucy F. Devillier (hereinafter the Devilliers), the shareholders of Sentry, as guarantors of the notes executed by Sentry. On the same day, Planters brought suit for exec-utory process against Sentry and the Devil-liers on the collateral securing the notes. Subsequent to the filing of the suits, Planters was closed by the Louisiana Commissioner of Financial Institutions and the Federal Deposit Insurance Corporation (hereinafter FDIC) was appointed as liquidator and later substituted as plaintiff. The cases were consolidated prior to trial and converted to ordinary process. The FDIC then filed a motion for summary judgment. The trial court granted the summary judgment as prayed for and rendered judgment in favor of the FDIC and against Sentry for the principal balance of $407,212.00, plus interest and attorney’s fees, and against the Devilliers for the principal amount of $400,000.00 due on the promissory notes sued on, plus interest, attorney’s fees, and court costs. The judgment also recognizes the mortgages, pledge, continuing guarantee and assignment securing said notes. Sentry and the Devilliers appeal.
The substantial issue is whether 12 U.S.C. Sec. 1823(e) protects the FDIC against defenses urged by the Devilliers that the notes and mortgages sued on were procured by fraud, misrepresentation and coercion by officers of Planters.
The facts, as shown by the pleadings, answers to interrogatories, affidavits and other instruments considered in support of and in opposition to the motion for summary judgment are as follows. During 1979-1983 Planters made loans to Louisiana Drill Collars, Inc. These loans became delinquent and uncollectable. The FDIC bank examiners required Planters to write the loans off as bad debts, which would have required additional capitalization by the bank’s owners. To avoid writing the loans off, the bank persuaded Mr. Devillier, its loan officer, to organize a new corporation, Sentry Drill Collar Inspection, Inc., which *1165 purchased all of the assets and assumed the liabilities of Louisiana Drill Collars, Inc. Planters made new loans to Sentry.
While acting as President of Sentry, Russell Devillier executed eleven promissory notes to Planters in amounts ranging from $401,434.97 to $82.50. As security for the payment of these hand notes, the Devilliers signed a continuing guarantee for up to the amount of $400,000.00, executed mortgages on movable and immovable property, and each pledged 100 shares of Sentry stock. Russell Devillier also executed an assignment of accounts receivable as further security for the notes.
On Sentry’s failure to pay the hand notes, Planters filed suit against Sentry and the Devilliers. Planters filed two petitions on March 28, 1984, one seeking judgment on the promissory notes and the other for executory process. Sentry and the Devilliers answered the suits and urged numerous affirmative defenses including failure of consideration, fraud and coercion.
On May 18, 1984, the Louisiana Commissioner of Financial Institutions declared Planters insolvent and closed Planters. The FDIC was appointed as receiver and liquidator, and later substituted itself as a party plaintiff in place of Planters.
On February 14, 1985, the FDIC filed an amending and supplemental petition praying for judgment in its favor as the holder of the promissory notes and security devices formerly held by Planters. Sentry and the Devilliers answered the petition asserting the affirmative defenses of fraud, mistake, confusion, and offset. Sentry and the Devilliers further prayed for $500,000.00 in damages for wrongful seizure on the grounds that the mortgages were not signed before notaries, thus proscribing executory process. Thereafter the FDIC converted the executory to ordinary proceedings.
The FDIC filed motions for summary judgment in both consolidated cases. Attached to the motions are affidavits by the liquidators of Planters appointed by the FDIC, stating the amounts due on each of the notes sued on. All of the instruments sued on are also filed in the record.
Sentry and the Devilliers filed oppositions to the motions. In his affidavits in opposition to the motions for summary judgment, Devillier states that when he at first refused to sign the Sentry incorporation papers and later refused to sign the notes and mortgages securing the new loans to Sentry, the officers of the bank threatened to fire him, promised to assist Sentry in its business, assured him that he and his wife were signing the notes only as “accommodation” endorsers and that the bank would never seek to enforce the notes and mortgages. All of these stated acts of fraud, coercion and misrepresentation were oral. Nothing in writing supports them and there is nothing in the bank records to show them.
Devillier also states in his affidavit that, before this suit was filed, he personally advised employees of the FDIC in detail of the facts regarding the loans by Planters to Sentry and, in particular, regarding the fraud, misrepresentation and coercion by the bank in securing the Devilliers’ signatures to the notes. Thus, Devillier contends, the FDIC had knowledge of his defenses and of the fact that the notes were overdue and dishonored at the time the FDIC acquired the notes from Planters and, therefore, the FDIC is not a holder in due course.
Devillier also claims an offset by the amount of damages suffered as a result of the wrongful seizure in the suit by exec-utory process.
After conducting a hearing on the consolidated cases, the trial court granted the motion for summary judgment filed by the FDIC, and rendered judgment in favor of the FDIC and against Sentry in the principal amounts of the promissory notes, plus interest and attorney’s fees, as provided in the hand notes, and court costs. The court further rendered judgment in favor of the FDIC and against the Devilliers in the principal amount of $400,000.00, plus interest and attorney’s fees, as provided in the hand note, and court costs. The judgment also recognizes the mortgages and other security instruments. A written judgment was *1166 signed on January 22, 1986. Sentry and the Devilliers have appealed, contending that the trial court erred in finding that the FDIC was entitled to summary judgment based on the evidence before the trial court. Specifically, defendants contend on appeal that the trial court erred:
(1) In holding that the FDIC was immune from the defenses asserted by defendants; and
(2) In granting the FDIC’s motion for summary judgment when genuine issues of material fact existed as to the amount in dispute, fraud, coercion, failure of consideration, knowledge of the fraud by the FDIC, the holder in due course standing of the FDIC, whether or not the Devilli-ers signed any of the notes and security devices as accommodation makers, and offset by the damages for wrongful seizure.
The issue presented by this appeal is virtually identical to the issue presented in a decision recently rendered by this court, Planters Trust & Sav. Bank v. L & W Farms, 496 So.2d 1268 (La.App. 3 Cir. 1986), writ den., 499 So.2d 87 (La.1987). In L & W Farms, the defendants alleged that they were fraudulently induced into forming a corporation by relying on the oral misrepresentations of the shareholders of Planters. As in this case, the trial court granted FDIC’s motion for summary judgment and rendered judgment in its favor. On appeal, this court affirmed the judgment of the trial court, reasoning as follows:
“[I]t is well established, under both federal common law and statutory provisions, that oral agreements between borrowers and banks are ineffective against the FDIC as a receiver where the agreements are not recorded. Federal Deposit Ins. Corp. v. Rosenthal, All F.Supp. 1223 (E.D.Wis.1979), aff'd, 631 F.2d 733 (7th Cir.1980); Gunter v. Hutcheson, 674 F.2d 862 (11th Cir.1982), cert. den., 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), reh. den., 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982).
The rule which proscribes the enforcement of unwritten agreements against the FDIC evolved from the case of D’Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The Fifth Circuit interpreted D’Oench as holding that a defendant would not be allowed to assert as a defense to a claim by the FDIC that a written document which is valid on its face, is modified by a secret agreement. Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises, 642 F.2d 785 (5th Cir.1981).
In 1950, Congress added a second paragraph to 12 U.S.C. § 1823(e), which protects the FDIC from secret agreements, and because of this protection the FDIC can rely upon the records of a bank when purchasing its assets. Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises, supra. The language of the statute is as follows:
‘(e) Agreements against interests of Corporation
No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.’
D’Oench and Section 1823(e) demonstrate the policy in federal banking law that the FDIC should not be bound by anything outside a bank’s records when the FDIC purchases the bank loans and loan documents. Federal Deposit Ins. Corp. v. MM & S Partners, 626 F.Supp. 681 (N.D. Ill 1985). The effect of Section 1823(e) is to insulate the FDIC in its official capacity from any claims a debtor of an insolvent bank may have against the insolvent bank. *1167 Federal Dep. Ins. Corp. v. James T. Barry Co., 453 F.Supp. 81 (E.D.Wis.1978).
The Congressional purpose in creating the FDIC was to promote soundness of banking and to aid the government in the discharge of its financial transactions. Federal Deposit Ins. Corp. v. Rockelman, 460 F.Supp. 999 (E.D.Wis.1978). These sound policy reasons dictate against holding the FDIC liable for knowledge of side agreements as well as the hidden value of bank assets. F.D.I.C. v. Merchants Nat. Bank of Mobile, 725 F.2d 634 (11th Cir. 1984), cert. den., 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).
‘Typically, the FDIC must move quickly in buying a bank’s assets, and it should not be obliged to rummage through a bank’s records to find the hidden value of the notes. See [Federal Deposit Ins. Corp. v.] Wood, 758 F.2d [156] at 161 [ (6th Cir.1985) ]. See also [Federal Deposit Ins. Corp. v.] Harrison, 735 F.2d [408] at 412-13 n. 6 [(11th Cir.1984)] (federal policy to promote stability of nation’s banking system by facilitating FDIC’s smooth acquisition of assets). Therefore, the policy supporting FDIC protection in collateral agreement situations applies equally to all situations in which the maker’s defense is based on something, representations or conduct, outside of the note itself.’ (Footnote omitted.) Federal Deposit Ins. Corp. v. MM & S Partners, 626 F.Supp. 681, at page 687 (N.D.Ill.1985).
[[Image here]]
The Supreme Court has made clear that agreements which avoid the requirements intended to protect the FDIC are invalid. Section 1823(e) is explicit in its requirements for the validity of collateral agreements. Federal Deposit Ins. Corp. v. de Jesus Velez, 678 F.2d 371 (1st Cir.1982).
It has been held that Section 1823(e) is a sufficient basis to grant summary judgment on a defendant’s fraud in the inducement defense. Federal Deposit Ins. Corp. v. Hatmaker, 756 F.2d 34 (6th Cir.1985). In Hatmaker, the court found that Section 1823(e) clearly covers a defense based on an oral promise by the bank to make future loans to the borrower which the bank does not intend to perform. Any affirmative defense that flows from an oral agreement is barred by this statute, even if phrased in terms of fraud in the inducement. Federal Deposit Ins. Corp. v. Vestring, 620 F.Supp. 1271 (D.C.Kan.1985).
‘If an obligor may successfully void a note and recoup damages against the FDIC based on a claim of fraudulent inducement from an unwritten agreement, he will have made an end run around § 1823(e) by asserting as fraudulent the same unwritten agreement of which a breach resulting in damages may not under § 1823(e) be asserted against the FDIC.’ Federal Deposit Ins. Corp. v. Lattimore Land Corp., 656 F.2d 139, at page 146 (5th Cir. 1981).’
Appellants seek to rely on several cases establishing the defenses to Section 1823(e) of failure of consideration, fraud, and breach of bilateral obligations concerning the asset. F.D.I.C. v. Merchant’s Nat. Bank of Mobile, supra; Gunter v. Hutcheson, supra. These cases can be distinguished, since the obligors in those cases were not seeking to alter the terms of the written documents by the terms of an undisclosed oral arrangement, but instead were asserting that the written documents themselves were invalid because of the underlying factual misrepresentation. Federal Deposit Ins. Corp. v. Langley, 792 F.2d 541 (5th Cir.1986).
In Langley, supra, a recent Fifth Circuit case involving the same Planters Bank as the one in this suit, the defendants asserted claims against the FDIC, similar to those made in the present case, and the court held that defenses emanating from an oral side agreement with the bank are barred by the FDIC’s statutory protections. As in the present case, the Langleys purchased a farm financed by Planters executing a promissory note secured by a mortgage and personal guaranties. When the Bank sued for nonpayment, the Langleys initiated suit against Planters, alleging that the bank made certain representations that the defendants considered material to their entering into the loan.
*1168 Finding that the warranties and loan terms alleged by the Langleys were not contained in the promissory note, guaranty, or mortgage, the court could not conclude that Planters withheld material terms from the parties. Relying on Section 1823(e), the court affirmed the motion for summary judgment in favor of the FDIC, reasoning as follows:
“Turning from these principles to the facts of the instant case, it cannot be gainsaid that the Langleys and Planters withheld material terms from the eyes of federal examiners. Indeed, the absence of such terms from Planters’ loan files as to the alleged nonrecourse nature of the loan and the deferral of all payments until the property was resold, effectively rendered what would appear to an objective observer to be a sound loan into one of highly questionable, if not minimal, value. It is clear that this total oral side agreement is an ‘agreement which tend[s] to diminish ... the ... interest of the [FDIC].” Thus, the Langleys clearly did not comport with the dictates of section 1823(e) and its predecessor, D’Oench. Despite the critical importance of these alleged loan terms, they were not included in the loan documents available to bank examiners. By not insisting that Planters’ promises and agreements be included in the loan documents — assurances which the Langleys concede go to the heart of their loan transaction— the Langleys lent themselves to a loan transaction that withheld the key aspects of their loan transaction from bank regulators. As this Court has noted, ‘The language of the statute is all encompassing; any agreement is subject to the statute if it tends to defeat or diminish FDIC’s rights in an asset purchased under authority of § 1823.’ FDIC v. Hoover-Morris Enterprises, 642 F.2d 785, 787 (5th Cir.1981).’ Federal Deposit & Ins. Corp. v. Langley, 792 F.2d 541, at page 545 (5th Cir.1986).” Planters Trust & Sav. Bank v. L & W Farms, supra, at pages 1271-1273.
In the L & W Farms case, this Court held that the FDIC is immune under the provisions of 12 U.S.C. § 1823(e) from the defenses of fraud, illegality, mistake, estoppel, and failure of consideration arising from an unwritten agreement. In addition to these defenses, defendants in this case assert that genuine issues of material fact existed as to the amount in dispute, knowledge by the FDIC of the fraud, the holder in due course standing of the FDIC, and whether or not the defendants signed any of the notes or security devices as accommodation makers.
In their brief on appeal, appellants argue for the first time that there is an issue of fact as to the amounts due on the hand notes. This defense was not pleaded in defendants’ answers, was not the subject of any of their interrogatories, and was not mentioned in Devillier’s affidavit in opposition to the summary judgment in our docket number 86-340. The only reference by Devillier in the record to the amounts due on the notes is in his affidavit in our docket number 86-341, at page 161. He states that Planters “did not loan $402,038.60, on note number 105333, Exhibit ‘A’, to Sentry Drill Collar Inspection, Inc., Russell J. Dev-illier and/or Lucy F. Devillier and an audit of Planter’s Trust and Savings Bank verified said fact.” This is the only note questioned. The audit referred to is not in the record, nor is the auditor named, nor is there any explanation as to whether the contention is based on fraud or on error of calculation or any other specific facts.
An examination of this note reveals it is for the principal amount of $401,434.97 and is signed by Russell J. Devillier, as president of Sentry, acknowledging value received. Notations on the reverse side show a credit reversal on December 23, 1983 in the sum of $603.63 was added to the principal of $401,434.97, making the total of $402,038.60 due.
There are two affidavits in the record by liquidators of Planters, one dated March 28, 1985 by William E. Smith, and one dated August 26, 1985 by Neil Steimer. Both state that affiants have custody of Planters’ records which show that the principal amount due on the note in question is $402,038.60.
*1169 We are aware of the Louisiana jurisprudence under LSA-C.C.P. Article 966 that the party seeking summary judgment has the burden of showing there is no genuine issue of material fact, and any doubt must be resolved in favor of a trial on the merits. Morgan v. Matlack, Inc., 342 So.2d 167 (La.1977), aff’d, 366 So.2d 1071 (La.App. 1 Cir.1979). But once a motion for summary judgment has been made and properly supported, a party opposing the motion must set forth specific facts showing a genuine issue requiring trial. LSA-C.C.P. Article 967; Aydell v. Charles Carter & Co., Inc., 388 So.2d 404 (La.App. 1 Cir.1980), writ den., 391 So.2d 460 (La.1980); Welch v. Daigrepont, 378 So.2d 607 (La.App. 3 Cir. 1979).
The present case is similar to Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068 (La.App. 3 Cir.1985), where the plaintiff, in a suit on an open account, filed a motion for summary judgment with supporting documents showing the amount due. The defendant filed an opposition attaching an affidavit stating only that the amount due was disputed. The court found defendant’s affidavit insufficient to show a genuine issue as to the amount due, since no specific factual details were given.
Under the above rules, we conclude the FDIC clearly proved, by the affidavits of the liquidators, the amount due. The affidavit of Mr. Devillier, quoted in pertinent part above, is not sufficiently specific to show that the amount due is an issue requiring trial.
Defendants argue that since § 1823(e) does not shield the FDIC with the protections afforded a holder in due course, the FDIC is subject to any defenses of which it had knowledge that are available in an action on a simple contract. It is well established that although the FDIC is not a holder in due course under the terms of the Uniform Commercial Code, the FDIC has a preferred status equivalent to that of a holder in due course and is not subject to the maker’s defenses which were not such as could be raised against one having the status of a holder in due course. Federal Deposit Ins. Corp. v. Allen, 584 F.Supp. 386 (E.D. Tenn 1984); Federal Deposit Ins. Corp. v. Leach, 525 F.Supp. 1379 (E.D. Mich.1981), modified, 772 F.2d 1262 (6th Cir.1985); Federal Deposit Ins. Corp. v. Kucera Builders, 503 F.Supp. 967 (N.D.Ga. 1980); Slocumb v. Federal Deposit Ins. Corp., 156 Ga.App. 821, 275 S.E.2d 760 (1980).
Thus, defendants’ arguments as to the effect of the FDIC’s knowledge and the effect of the Devilliers’ status as accommodation makers on the validity of the transaction are irrelevant. It is firmly established that where § 1823(e) is applicable, it is applied regardless of any knowledge, actual or imputed, which the FDIC may have had regarding the terms of the side agreement. FDIC v. Merchants Nat. Bank of Mobile, 725 F.2d 634 (11th Cir. 1984), cert. den., 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984); Federal Deposit Ins. Corp. v. Gardner, 606 F.Supp. 1484 (S.D.Miss.1985); Brit. Col. Inv. Co. v. Federal Deposit Ins. Corp., 420 F.Supp. 1217 (S.D.Cal.1976). As a matter of federal law, it is not necessary for an accommodation maker to have knowledge of the specific scheme or fraudulent arrangement, as long as he lends himself to a scheme to aid the bank in concealing the true nature of the transaction. Federal Deposit Ins. Corp. v. First Nat. Finance, 587 F.2d 1009 (9th Cir.1978).
As to the Devilliers’ claim to an offset for damages caused by Planters’ unlawful seizure in the executory proceedings, Federal jurisprudence has established the rule that the FDIC is not liable for unliquidated claims against the former bank. In Re F. & T. Contractors, Inc., 718 F.2d 171 (6th Cir.1983) and cases cited therein. In its corporate capacity the FDIC does not “stand in the shoes” of the failed bank. It is merely an insurer and is not liable for unliquidated claims against the bank. Gregory v. Mitchell, 634 F.2d 199 (5th Cir.1981). Under this jurisprudence, the Devilliers’ claim for damages, which is clearly unliquidated, cannot be urged as an offset. Moreover, under LSA-C.C. Article 1893, compensation and offset take place *1170 only when the claims urged are equally liquidated and demandable. The Devilliers’ claim for damages is not now liquidated or demandable.
In conclusion, summary judgment is appropriate under LSA-C.C.P. Article 966, because there are no genuine issues of material fact and the PDIC is entitled to judgment as a matter of law. Most of defendants’ brief attempts to show issues of “material” fact as to their defenses of fraud, misrepresentation and coercion. However, even if we accept as true all of defendants’ allegations of fact regarding these defenses, the FDIC is nonetheless entitled to judgment as a matter of law.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed against defendants-appellants.
AFFIRMED.