**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff, Appellee,**

v.

**Marcelino ROLDAN FONSECA, et al., Defendants, Appellants.**

No. 85–1274.

United States Court of Appeals, First Circuit.

Argued Sept. 13, 1985.

Decided June 27, 1986.

---

Richard A. Lee, San Juan, P.R., with whom Steven T. Scott, Hato Rey, P.R., were on brief, for defendants, appellants.

Victoria D. Pierce, Hato Rey, P.R., with whom Michael B. Burgee, Deputy Gen. Counsel, Washington, D.C., and John David Ferrer, San Juan, P.R., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, ALDRICH and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This is an appeal from a summary judgment in an action by the Federal Deposit Insurance Corporation (FDIC) seeking foreclosure of mortgage and collection of monies under 12 U.S.C. § 1819. Jurisdiction is predicated on 28 U.S.C. § 1345. We affirm.

I

Appellants Marcelino Roldán-Fonseca and his wife Felícita Aponte purchased in 1977 a piece of real property encumbered with a first mortgage lien guaranteeing a $13,000 note. Appellants assumed said mortgage and in addition executed a second mortgage on the property to secure a $16,000 promissory note in favor of the seller, Santiago Halais (Halais). Subsequently, the first mortgage creditor transferred the $13,000 note to Banco Crédito y Ahorro Ponceño (Banco Crédito).

A year after the sale, Halais told appellants that he wanted them to pay the $16,000 due. Appellants did not, however, have the $16,000. Nor could they qualify for a federally-insured refinancing mortgage loan. Thus, Halais and appellants agreed that the latter would sell the property to Ivette Halais (Halais' daughter) and her fiancée Salvador Torralbas, who as buyers would apply for a mortgage loan to refinance the two outstanding mortgages. Upon completion of the refinancing trans-

action, Torralbas and Ivette Halais (Torralbas/Halais) would sell the property back to appellants who would then assume what the parties expected would be a single mortgage lien.

Pursuant to said agreement appellants sold the property to Torralbas/Halais who, on January 27, 1978, executed a mortgage lien guaranteeing a $28,050 note. By its own terms the mortgage contract was to constitute a first mortgage lien in favor of Advisors Mortgage Investors, Inc. (Advisors). The proceeds from the sale were to be used to settle the loans secured by the two outstanding mortgages. Accordingly, Torralbas/Halais payed the $16,000 owed to Halais. Upon delivery of the $16,000 note, Advisors cancelled the mortgage lien guaranteeing said note. Neither Advisors nor Torralbas/Halais, however, cancelled the first outstanding mortgage lien, even though Advisors had retained the portion of the proceeds designated to pay the first mortgage note. The Registry of the Property of Puerto Rico recorded the mortgage guaranteeing the note payable to Advisors as a second mortgage lien. Thereupon Advisors sold the $28,050 note to Consolidated Mortgage and Finance Corporation (Consolidated) which in turn pledged it to Banco Crédito as collateral for funds.

The FDIC obtained both the $13,000 and $28,050 notes upon becoming the receiver of Banco Crédito in March 1978. Banco Popular de Puerto Rico (Banco Popular) acquired the first mortgage note from the FDIC receivership in 1978. The FDIC in its corporate capacity purchased the $28,050 note from the FDIC in its receiver capacity on March 31, 1978. Appellants reacquired the property on January 23, 1980, thereby assuming responsibility for the payment of aforementioned notes. In 1983 the FDIC filed the complaint in the instant case seeking collection of monies and mortgage foreclosure on the basis of the $28,050 note. Appellants counterclaimed and filed a third-party complaint against Torralbas/Halais and the attorney attending the execution of the $28,050 note.[1] The district court dismissed the third-party complaint and subsequently granted the FDIC's motion for summary judgment.[2] This appeal ensued. Appellants contend that the court below erred in entering summary judgment under Fed.R. Civ.P. 56.

## II

Summary judgment may be granted if the case contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Santoni v. FDIC*, 677 F.2d 174, 177 (1st Cir.1982). The burden is on the moving party to present evidence showing the absence of factual dispute as to material issues raised by the pleadings. *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 991 (1st Cir.1983). Appellants argue that this burden was not met below because the FDIC failed to submit evidence addressing issues raised by claims and affirmative defenses presented in the counterclaim and answer to the complaint. The FDIC counters that (1) it only presented evidence regarding *material* issues raised by the pleadings; and (2) issues raised by appellants' answer and counterclaim were immaterial and, therefore, did not justify the presentation of evidence showing the absence of factual dispute.

As a legal matter, FDIC is correct, but in a notable respect the record is not at all like the customary summary judgment

---

**1.** The third-party complaint basically averred that Torralbas/Halais had failed to obtain the proceeds of the refinancing loan and to cancel outstanding mortgages encumbering the property. Also, it stated that the attorney who intervened in the drafting and execution of the sale-and-purchase deed knew that the *sole* purpose of the conveyance was to "procure and obtain a mortgage loan for appellants and that the parties did not intend the conveyance of real property set forth in said deed." Finally, the third-

party complaint averred that despite said knowledge the attorney had failed to advise the executing parties as to the legal effects and consequences of simulated transactions, thus violating Puerto Rico's Notarial Law.

**2.** The district court dismissed the third-party complaint on August 20, 1984. No appeal was taken from that decision.

record. FDIC has furnished but one affidavit, this being a short one to the effect that the facts in a certain pleading are true to the best of affiant's "knowledge and belief." This is in no way the evidentiary affidavit called for in the rule. Unsworn factual recitations in legal memoranda are also of no value. Finally, FDIC's reliance upon facts "considered proven" by the court in ruling on a motion to dismiss is equally unjustified. This acceptance was only for the purpose of determining legal insufficiency in a quite different area and context.

All that FDIC is entitled to rely on here, accordingly, is what appellant appears on the record to admit. This includes (1) the FDIC in its corporate capacity is the holder of the $28,050 note; (2) a mortgage guaranteeing said note is duly recorded at the Registry of Property of Puerto Rico; (3) the mortgage note was purchased by the FDIC–Corporation from the FDIC–Receiver pursuant to 12 U.S.C. § 1823(e); (4) the property encumbered by the $28,050 mortgage belongs to appellants; (5) appellants had assumed the mortgage whose foreclosure was being sought; (6) the aforementioned note is in arrears; and (7) appellants owed the FDIC amount claimed in the complaint.[3]

On the other hand, movants for summary judgment do not have to present evidence as to averments involving immaterial issues. A material issue is raised when the facts alleged, if proven, are such as to constitute a valid claim or defense. *FDIC v. Lauterbach*, 626 F.2d 1327, 1335 (7th Cir.1980). Since claims and affirmative defenses posing irrelevant issues do not require the submission of evidence showing the absence of factual dispute, the question here is whether averments not addressed by FDIC in appellants' answer and counter-

claim amount to valid defenses or claims against the FDIC.

### A

■ 1. Appellants claim that the $28,050 note was executed to cancel two mortgages encumbering their property. Advisors, however, failed to disburse funds to pay the $13,000 indebtedness and cancel the first mortgage lien. Appellants claim that the FDIC should be held accountable for Advisors' failure to settle the $13,000 mortgage because (1) said failure amounted to fraud in the execution of the contract; and (2) since the FDIC had knowledge of Advisors' fraud it is not a holder in due course. Therefore, they contend that the FDIC is subject to all claims and defenses stemming from the failure to cancel the first mortgage lien, to wit: (1) the nullity of the $28,050 note due to lack of consideration resulting from Advisors' fraud; (2) preclusion of foreclosure due to the failure to settle the first mortgage note; and (3) liability for sums outstanding from the $13,000 indebtedness which appellants allegedly settled through the execution of the $28,050 note.[4]

■ Federal law governs cases where, as here, the FDIC in its corporate capacity sues to collect assets acquired from the receiver of an insured bank. *FDIC v. De Jesús-Vélez*, 678 F.2d 371, 374 (1st Cir. 1982); *FDIC v. Bird*, 516 F.Supp. 647, 649 (D.P.R.1981). Federal statutory law makes the aforementioned claims and defenses immaterial in the instant case.

■ By Section 1823(e) Congress gave the FDIC special protections not available to ordinary holders of commercial paper which are not dependent upon whether the FDIC would qualify as a holder in due course under state law. *FDIC v. Mer-*

---

**3.** As to points 6 and 7, see post.

**4.** Appellants also seem to have challenged the validity of the $28,050 mortgage because even though the mortgage contract required said mortgage to be a first lien on the property the Registry of Property of Puerto Rico recorded it as a second lien. The Supreme Court of Puerto Rico has sustained the validity of mortgages recorded as second liens even though by their own terms they purport to be first liens on property. *Ponce Federal Savings v. Registrador*, 105 D.P.R. 487 (1976). Thus, contrary to appellants' view, the $28,050 mortgage is not invalid by reason of its rank as a second lien at the Registry of Property.

chants National Bank of Mobile, 725 F.2d 634, 635 (11th Cir.1984), cert. denied, — U.S. ——, 105 S.Ct. 114, 83 L.Ed.2d 57 (1985); FDIC v. De Jesús-Vélez, supra at 375 n. 10. Section 1823(e) provides:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Agreements not meeting all four requirements set forth by the statute are unenforceable against the FDIC. FDIC v. De Jesús-Vélez, supra. Such is the case here.

Appellants' claims and defenses stem from Advisors' failure to cancel the $13,000 mortgage. Yet the $28,050 note under which the FDIC pursues the instant action fails to mention Advisors' agreement to cancel the $13,000 mortgage. Nor does the mortgage securing said note refer to Advisors' promise thereto. Since Advisors' promise fails to meet the threshold requirement of Section 1823(e) that the agreement be in writing, it cannot serve to defeat or diminish the FDIC's interest in the $28,050 note. Id.; see also Chatham Ventures, Inc. v. FDIC, 651 F.2d 355, 362 (5th Cir. Unit B 1981), cert. denied, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982) (obligors may not assert unwritten agreements against the FDIC). Insofar as appellants seek to make the FDIC liable for the breach of an agreement for which the FDIC is not accountable, they must fail even though it knew (a claim of knowledge FDIC has not, in spite of constant repetition in its brief, properly denied by affidavit) that Advisors had failed to perform its promise to pay off the $13,000 note. But this is precisely what FDIC is protected from by virtue of Section 1823(e), FDIC v. Hatmaker, 756 F.2d 34, 37 (6th Cir.1985), even if FDIC is not a holder in due course. See FDIC v. De Jesús-Vélez, 678 F.2d ante, 375 n. 18.[5]

2. Next, appellants allege that corporate FDIC told them in 1979 that the title insurance company was assuming responsibility for cancelling the $13,000 mortgage. They claim that the FDIC's assertions induced them to honor their commitment with Torralbas/Halais to reacquire the property. Also, they claim that corporate FDIC instructed them not to pay the $28,050 note while the FDIC procured with the title insurance company the settlement of the first mortgage. The insurance company refused in 1982 to cancel the $13,000 mortgage. Appellants contend that the FDIC is estopped from (1) claiming arrears in the installments due while the FDIC procured the settlement of the first mortgage; and (2) collecting interest for the time it told appellants not to pay the $28,050 note. Also, they contend that the FDIC is generally estopped from collecting the $28,050 note.

Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or a defense, regardless of its substantive validity. Phelps v. Federal Emer-

---

**5.** Also, appellants assert having suffered damages as a result of FDIC's failure to secure the cancellation of the $13,000 mortgage. As noted above, however, there is no provision in either the $28,050 note or mortgage regarding mortgagees' obligation to cancel the $13,000 mortgage. Since the obligation to cancel the $13,000 mortgage is not in writing, it does not comply with 12 U.S.C. § 1823(e) and, accordingly, cannot be enforced against the FDIC. FDIC v. Hatmaker, supra at 35. As appellants seek to make the FDIC accountable for the failure to comply with an obligation for which it is not responsible, their claim does not present material issues requiring the absence of factual dispute for summary judgment to stand.

*gency Management Agency,* 785 F.2d 13 (1st Cir.1986). Courts invoke the doctrine when "one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it" acts to his detriment. *Id.,* quoting Restatement (Second) of Torts § 894(1) (1977). Even assuming, *arguendo,* that appellants have raised a valid defense of equitable estoppel against the FDIC, we feel that defense is not applicable in the instant case.

In *Phelps,* 785 F.2d at 17–19, following *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), we reversed a district court decision allowing the assertion of equitable estoppel against the Federal Emergency Management Agency (FEMA), noting that "the Supreme Court has never shown hospitality toward claims of estoppel against the Government." Like the FEMA in *Phelps,* FDIC is a government insurance agency. Also as in *Phelps,* appellants allegedly relied on the assertions of a government agency to their detriment.

At least one circuit has permitted the assertion of equitable estoppel against the FDIC acting in its corporate capacity, reasoning that "[a]ctivities undertaken by the government primarily for the commercial benefit of the government or an individual agency are subject to estoppel while actions involving the exercise of exclusively governmental or sovereign powers are not." *FDIC v. Harrison,* 735 F.2d 408, 411 (11th Cir.1984). However, in *Phelps* we expressly rejected the proposition that the sovereign/proprietary distinction justifies treating a government agency as a private party for estoppel purposes, because the Supreme Court has "found no merit in this distinction." 785 F.2d at 17. Thus, we disagree with the Eleventh Circuit's conclusion that the proprietary functions performed by corporate FDIC justify the as-

sertion of equitable estoppel claims against it.[6]

In view of the foregoing, appellants' claim of equitable estoppel does not preclude an award of summary judgment for FDIC.

3. Appellants contend that the FDIC's failure to collect the $28,050 note before 1983 amounted to waiver and enjoins the FDIC from collecting and foreclosing in the instant case. Averments raised by this contention are immaterial and do not preclude summary judgment.

The statute pursuant to which the FDIC exists and functions provides no time limitation within which it must sue to collect and foreclose on mortgage notes acquired in its corporate capacity. Congress has, however, provided a statute of general applicability to govern the time period within which federal corporations, such as the FDIC, are to bring actions founded upon contract. *See* 28 U.S.C. § 2415. Section 2415 provides in part:

> (a) ... every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....

When the FDIC purchases the assets of a bank, it should not be barred from bringing an action if a private party acquiring the same assets in the same manner would not be barred. *FDIC v. Cardona,* 723 F.2d 132, 134 (1st Cir.1983). If a private party would have more than six years remaining under the relevant statute of limitations in which to bring its action, the FDIC should have at least the six years provided in 28 U.S.C. § 2415(a) in which to bring its action. *Id.*

Foreclosure actions like the one at bar are subject in Puerto Rico to the 20-year term of extinctive prescription set forth by Article 1864 of Puerto Rico's Civil

---

6. We intimate no opinion as to whether the FDIC acting in its capacity as receiver may be subject to claims of equitable estoppel, or whether there might be other circumstances justifying the assertion of equitable estoppel against the FDIC in its corporate capacity.

Code, 31 L.P.R.A. § 5294. *See generally* R.M. Roca Sastre & Roca Sastre Muncunill, *Derecho Hipotecario,* tit. IV, vol. 2, Bosch, Barcelona, pp. 1209–17 (1979). Thus, the collection and foreclosure action was not barred when the FDIC purchased the note at issue on March 31, 1978. If the collection and foreclosure action is viewed as an action for money damages brought under the mortgage contract, the FDIC had at least six years from 1978 to collect and foreclose in the instant case. As the complaint here was filed on May 12, 1983, there can be no dispute that the FDIC filed this suit within the six year limitation of 28 U.S.C. § 2415(a).

 Moreover, even if it were held that § 2415 is inapplicable here, *see Cracco v. Cox,* 66 App.Div.2d 447, 414 N.Y.S.2d 404 (1979) (§ 2415 inapplicable to mortgage foreclosures by the United States or its agencies), the action by the FDIC would still not be time-barred. First, it has been noted that the defense of laches is not applicable to actions brought by the FDIC in its corporate capacity. *FDIC v. Leach,* 525 F.Supp. 1379, 1388 (E.D.Mich.1981), citing *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *see also United States v. 93 Court Corp.,* 350 F.2d 386 (2d Cir.1965) (Reconstruction Finance Corporation not subject to defense of laches). Thus, the fact that the FDIC waited until 1983 to file suit may not operate to enjoin the FDIC from collecting and foreclosing in the instant case. Second, if state law were held to be applicable, the case at bar would be subject to the 20-year term governing in Puerto Rico the collection and foreclosure of mortgage credits. 31 L.P. R.A. § 5294; *Widow of Carlo v. Toro,* 99 P.R.R. 196 (1970). *See also* R.M. Roca Sastre & Roca Sastre Muncunill, *supra* at 1213. As mortgagees under the contract had twenty years to collect and foreclose, it cannot be stated that the FDIC was time-precluded from filing suit in the instant case.

### B

The counterclaim averred that the FDIC's sale of the $13,000 note to Banco Popular caused the FDIC to become an active participant in Advisors' fraud. According to appellants, the FDIC sold said note knowing it to be defective and thus fraudulently created, in Banco Popular, a holder in due course.

 "Corporate" FDIC and "Receiver" FDIC are separate and distinct legal entities. *Jones v. FDIC,* 748 F.2d 1400, 1402 (10th Cir.1984); *FDIC v. Ashley,* 585 F.2d 157 (6th Cir.1978). Corporate FDIC is not liable for wrongdoings by Receiver FDIC. *See, e.g., British Columbia Investment Co. v. FDIC,* 420 F.Supp. 1217, 1223–24 (S.D.Cal.1976) (dual capacity of FDIC as receiver and insurer-corporation requires that FDIC–Receiver not be held responsible for fraudulent acts of FDIC in its corporate capacity). Banco Popular acquired the $13,000 note from FDIC acting as a receiver, *not* from the FDIC in its corporate capacity. Therefore, claims regarding the fraudulent creation in Banco Popular of a holder in due course by the selling of the $13,000 note must be made against "Receiver" FDIC. The claim for fraud was filed against "Corporate" FDIC. Accordingly, the question whether the sale of the note to Banco Popular amounted to fraud is immaterial in the instant case.

 Next, appellants contend that corporate FDIC's assertions that the insurer would assume responsibility for cancelling the $13,000 mortgage, *ante* at 1107, coupled with the failure to cancel same has prevented them from seeking redress for having been victims of fraud. By appellants' own account, they willingly participated in a scheme designed to defraud banking authorities by using Torralbas/Halais as a front to obtain a mortgage-guaranteed loan for their property. *Ante* at 1104–1105. The Supreme Court of Puerto Rico has stated that coparticipants in fraudulent schemes may seek redress against coparticipants thereto if sued by third parties to such schemes. *Sánchez-Rodríguez v. López,* 85 J.T.S. 16. Thus, contrary to appellants' view, they may seek redress against individuals who are not

**1110**

parties hereto, but who may have knowingly participated with appellants in the fraudulent transactions which have resulted in appellants being liable to the FDIC. The mistaken assertion by the FDIC—a third party to appellants' dealings with both Halais and Torralbas/Halais—that the insurer would cancel the $13,000 mortgage does not change appellants' rights under *Sánchez-Rodríguez*. Accordingly, appellants' claim must fail.

**C**

In moving for summary judgment the FDIC submitted evidence that $27,981.23 in principal was due under the $28,050 note. The district court agreed and granted the FDIC's motion for summary judgment noting that appellants had failed to submit evidence to controvert evidence submitted by the FDIC. Appellants claim that the district court erred because in opposing summary judgment they submitted photocopies of the receipts of three money orders showing a factual dispute as to amount due.

Fed.R.Civ.P. 56(e) requires nonmovants to submit evidence that would be admissible at trial to oppose properly supported motions for summary judgment. *Finn v. Consolidated Rail Corporation*, 782 F.2d 13, 16 (1st Cir.1986); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2727 at 156 (2d ed. 1983). The record shows that appellants failed to comply with Fed.R.Civ.P. 56(e).

The receipts at issue corresponded to money orders made to the order of Consolidated Mortgage and Finance Corp. and signed by Ivette Halais. Appellants intended the receipts to serve as evidence of truth of the matter allegedly asserted, *i.e.*, that the amount appearing on the face of the documents had been paid on the $28,050 note. As such, the receipts constitute hearsay under Fed.R.Evid. 801 and generally would be inadmissible at trial to prove payments on the note. Fed.R.Evid. 802. Moreover, even though receipts arguably may have qualified as an exception to the exclusion of hearsay as records of regularly conducted business activity, appellants simply failed to present the statement of a qualified witness as required by Fed.R.Evid. 803(6). *Wallace Motor Sales, Inc. v. American Motors Sales Corporation*, 780 F.2d 1049, 1060–61 (1st Cir.1985).[7] Finally, the record is devoid of sworn statements made with personal knowledge that payments on the note were made as alleged by appellants. *Maiorana v. McDonald*, 596 F.2d 1072, 1080 (1st Cir. 1979). Accordingly, no admissible evidence was submitted by appellants to dispute evidence submitted by the FDIC on the amount due. Thus, we agree with the district court that appellants failed to meet their burden under Fed.R.Civ.P. 56(e).

**D**

In sum, the FDIC as movant for summary judgment met its burden of submitting admissible evidence to show the absence of factual dispute as to *material* issues raised by the pleadings. The district court correctly held that the FDIC was entitled to judgment as a matter of law. Therefore, summary judgment was appropriate. We find it unnecessary to address other issues raised by the parties.

*Affirmed.*

---

**7.** Federal Rule of Evidence 803(6) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

....

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.