FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,

v.

JAMES T. BARNES OF PUERTO RICO, INC., et al., Defendants.

Civ. No. 81–2143 (RLA).

United States District Court, D. Puerto Rico.

Sept. 29, 1993.

---

Edward A. Godoy, Feldstein, Gelpi & Gotay, Old San Juan, PR, for plaintiff.

Roberto Busó Aboy, Abraham Díaz González, Harry Anduze Montano, San Juan, PR, Pedro J. Varela, Hato Rey, PR, for defendants.

Jeffrey Axelrad, Dir. Torts Branch, Dina L. Biblin, Trial Atty., U.S. Dept. of Justice, Washington, DC, for FDIC as counter-claim defendant.

### OPINION AND ORDER

ACOSTA, District Judge.

Plaintiff, the Federal Deposit Insurance Corp. ("FDIC"), instituted this action for collection of monies and foreclosure of mortgage after the collapse of Banco Crédito y Ahorro Ponceño ("Banco Crédito"). The FDIC has moved this Court to set aside the judgment previously entered in this case dismissing the second cause of action as time barred with respect to defendants Pedro A. Parrilla, Margarita Rodríguez Morales, José Luis Collazo, Isabel M. Arostegui, Roberto Busó Aboy, and Marilyn García Cárdenas. See docket Nos. 203, 204, 206, 209, 210, 216, and 219. Defendants have duly opposed this request. See docket Nos. 207, 211, 212, 213, 226, and 227.[1]

In addition, the FDIC has petitioned the dismissal of the counterclaims asserted against it by Constructora Río Oro, Inc., Pedro and Margarita Parrilla, José Luis Collazo, Isabel Arostegui, Roberto Busó Aboy,

and Marilyn García Cárdenas for lack of jurisdiction over the subject matter pursuant to Fed.R.Civ.P. 12(b)(1). See docket Nos. 123, 126, 131, 178, 193, and 208. The counter-claimants opposed. See docket No. 184.

## I. MOTION TO SET ASIDE JUDGMENT

### A. THE ISSUE

Plaintiff contends that since it brought this suit for the collection of monies in its corporate capacity, federal and not state law applies to this action. Therefore, its claim is not time barred as to the aforementioned defendants under the 6–year statute of limitations contained in 28 U.S.C. § 2415(a). This Section reads, in its pertinent part, as follows:

> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....

28 U.S.C. § 2415(a). The statute of limitations contained in this Section applies "to FDIC as an agency of the United States." *F.D.I.C. v. Former Officers & Directors of Metro. Bank,* 884 F.2d 1304, 1306 (9th Cir. 1989), *cert. denied,* 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990) (citations omitted). We agree with the plaintiff.

### B. RELEVANT FACTS AND PROCEDURAL BACKGROUND

A Construction Loan Agreement ("CLA") was executed on January 29, 1974 between James T. Barnes of Puerto Rico, Inc. ("Barnes"), as "mortgagee or lender"; Constructora Río Oro, Inc. ("Constructora"), as "owner or borrower"; and Pedro A. Parrilla and his wife Margarita Rodríguez Morales, José Luis Collazo and his wife Isabel M. Arostegui, Roberto Busó Aboy and his wife Marilyn García Cárdenas, and Wilfredo Torres Ramos,[2] as "guarantors". According

---

1. The other claims asserted in the complaint were previously disposed of by the Court. *See* docket Nos. 36, 59, 67, 86, 115, 129, 161, and 205.

2. It should be noted that Wilfredo Torres Ramos filed a petition for bankruptcy, and the case was stayed as to him pursuant to the provisions of the

to this document, Constructora, as owner of some land located in Guaynabo, Puerto Rico, applied to Barnes for a mortgage loan to be secured by the aforementioned property. The proceeds were to finance the development of the Villa Caparra Court Condominium.

Barnes agreed to make the loan and to advance the same in installments from time to time as requested, in accordance with several amounts contained in a Loan Breakdown Schedule that was made part of the CLA. The total amount of the loan was not to exceed $1,755,200.00 and was to be made within a period of 18 months from the date of the agreement, "but in no event beyond and after June 30, 1975." CLA at page 2, paragraph 1 (docket No. 1). The loan was to mature within 18 months of January 29, 1974, i.e., on July 29, 1975, at which time all advances, accrued interest, and expenses incurred by Barnes in regard to the financing involved in the CLA were to be paid by Constructora. Complaint's Exhibit E at page 38 (docket No. 1). Each loan made under the CLA had to be evidenced by a promissory note from Constructora, and the notes made were to be payable on demand in accordance with the terms of the CLA. Clause 32 of the CLA reads as follows:

> Each party hereto acknowledge his full understanding of the provisions of this Agreement, and that there are no verbal promises, covenants, understanding or agreements made in connection with this Construction Loan Agreement, and that said Agreement may be modified only by due and properly executed covenant in writing, signed by the parties hereto and fully witnessed.

Complaint's Exhibit E at page 22 (docket No. 1).

According to the CLA, "Guarantors will jointly and severally guarantee all advances made pursuant to this Agreement." Complaint's Exhibit E at page 38 (docket No. 1). The CLA was later assigned by Barnes to the order of Banco Crédito on May 24, 1974. Complaint's Exhibit E at page 41 (docket No. 1).

A Mortgage Note promising to pay to the bearer, on demand, the principal sum of $1,755,200.00 plus interest from the date of the note, was also signed by the president of Constructora on January 29, 1974. Complaint's Exhibit F (docket No. 1). This note was guaranteed and secured by a mortgage lien encumbering the Villa Caparra Court Condominium and the land on which it is situated. Complaint's Exhibit G (docket No. 1).

On January 29, 1974, Pedro A. Parrilla and his wife Margarita Rodríguez Morales, José Luis Collazo and his wife Isabel M. Arostegui, Roberto Busó Aboy and his wife Marilyn García Cárdenas, and Wilfredo Torres Ramos, also signed a document in which they jointly and severally guaranteed with Constructora any loans or advances obtained by Constructora at that time or to be obtained in the future by Constructora from Barnes, not to exceed $1,755,200.00 plus interest. This general guarantee was assigned by Barnes to the order of Banco Crédito on May 24, 1974, and contains, *inter alia,* the following clauses:

> This is an irrevocable continuing guarantee and shall be in full force and effect until such time as any amounts lent to CONSTRUCTORA RIO ORO, INC. have been totally paid.
>
> This guarantee binds the undersigned and their respective executors, administrators, successors and assigns, as soon as you [i.e., Barnes] shall have made any loan or advances or discount, or extend any credit according to this document or in the basis of this guarantee, and the undersigned hereby consents and agrees that all loans and advances which you hereafter make, all instruments which you may hereafter discount and all credits which you may hereafter extend to or for the Borrower [i.e., Constructora] during the existence of this guarantee, shall be considered made at the request of the undersigned and on the basis of this guarantee.

Complaint's Exhibit H at page 2 (docket No. 1).

Bankruptcy Code. *See* docket Nos. 16, 161, 203 and 205.

On August 30, 1974 Banco Crédito and Barnes entered into a Loan Agreement which consisted, in essence, of an $11,000,000.00 line of credit extended by Banco Crédito to Barnes. Barnes was to use the line of credit in making real estate loans to its clients,[3] or for its working capital. One of the conditions governing this line of credit reads in part as follows: "Each Secured or Unsecured Note shall be dated the date of the loan evidenced thereby, shall be payable on demand, and shall bear interest from the date of the Bank's [i.e., Banco Crédito's] disbursement of the loan thereunder...." Complaint's Exhibit A at page 11 (docket No. 1). In addition, two of the loan agreement's provisions provided as follows:

a. This Agreement is executed in the Commonwealth of Puerto Rico, and the laws of Puerto Rico Commonwealth shall govern in the representation, enforcement, and all other aspects of the obligations and duties created hereby.

b. No provision of this Agreement shall be amended, waived or modified except by an instrument in writing signed by the parties hereto.

Complaint's Exhibit A at page 20 (docket No. 1).

A Pledge Agreement was also executed by Barnes on August 30, 1974, pledging the Mortgage Note issued by Constructora on January 29, 1974 as security for principal and interest on secured notes that were to be issued by Barnes to Banco Crédito under a Supplementary Agreement between them dated August 30, 1974, and issued pursuant to the Loan Agreement between Banco Crédito and Barnes, also dated August 30, 1974. The Pledge Agreement is signed by Barnes, accepted by Banco Crédito, and acknowledged by Constructora. Complaint's Exhibit F (docket No. 1).

On March 31, 1978 the Secretary of the Treasury for the Commonwealth of Puerto Rico determined that Banco Crédito was insolvent, ordered the bank closed, and took possession of its assets and affairs. That same date the FDIC was appointed Banco Crédito's receiver ("FDIC-receiver") for purposes of liquidation. As recently stated by the Court of Appeals for the First Circuit:

> The FDIC is best known in its "corporate" role as the statutory insurer of funds deposited in federally insured financial institutions, generally up to $100,000 per account. *See* 12 U.S.C. § 1821(a). The FDIC may also be appointed to take over the operations of a failed institution, acting as receiver or conservator depending on the functions that it has been assigned. *See id.* § 1821(c).

*Mary E. Lawson and Matt Lawson v. F.D.I.C.,* 3 F.3d 11, 13 (1st Cir.1993). The FDIC, in its corporate capacity ("FDIC-corporate"), then purchased from FDIC-receiver the obligations subject to this action. " 'Corporate' FDIC and 'Receiver' FDIC are separate and distinct legal entities." *F.D.I.C. v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986) (citations omitted). *See also F.D.I.C. v. de Jesús Vélez,* 678 F.2d 371, 373 n. 5 (1st Cir.1982) ("The FDIC can act both in its capacity as a receiver of a state bank, 12 U.S.C. § 1821(e) (Supp. II 1978), and in its corporate capacity as a purchaser of assets. 12 U.S.C. § 1823(d), (e) (1976)."); and *F.D.I.C. v. Barrera,* 595 F.Supp. 894, 897 (D.P.R.1984) ("The dual capacities of Plaintiff in the liquidation of a state insured bank are specifically authorized by 12 U.S.C. § 1821(e) and § 1823(e)."). On November 4, 1981 the original complaint in this case was filed by FDIC-corporate. "When acting in its corporate capacity, [the FDIC] is a federal agency." *F.D.I.C. v. Bird,* 516 F.Supp. 647, 649 (D.P.R.1981) (citations omitted).

## C.  PRIOR JUDGMENT

On May 16, 1988 we found that the loan extended to Constructora, a corporation engaged in the construction business, was mercantile, and since the borrowed monies were to be used for the construction of a condominium that was to be sold for profit, the transaction in question was a commercial

---

**3.** "Client" was defined in the loan agreement as "the owner, sponsor and developer of a Project, the development of which will be financed by loans to be made by [Barnes] to such Client." *See* Complaint's Exhibit A at page 2 (docket No. 1).

loan.[4] We therefore determined that the applicable statute of limitations to the loan was the 3–year provision contained in Sec. 946 of the Commerce Code of Puerto Rico, P.R. Laws Ann. tit. 10 App. I, § 1908 (1976). "The time-for-suit provisions contained in the Commerce Code are caducity terms." *F.D.I.C. v. Norberto Medina Realty*, 633 F.Supp. 24, 25 n. 1 (D.P.R.1986). Since the complaint in this case had been filed well after three years after the loan had become due and payable, i.e., July 29, 1975, this Court concluded that the action was time barred as to defendants Pedro A. Parrilla, Margarita Rodríguez Morales, José Luis Collazo, Isabel M. Arostegui, Roberto Busó Aboy and Marilyn García Cárdenas, and the second cause of action of the second amended complaint was dismissed as to them. *See* docket Nos. 203 and 204.

### D. APPLICABLE LAW

■ It is now well settled that "federal law applies where, as here, the FDIC sues in its corporate capacity to collect on obligations acquired from the receiver of an insolvent bank." *F.D.I.C. v. World University Inc.*, 978 F.2d 10, 13 (1st Cir.1992) (citations omitted). *See also F.D.I.C. v. Roldan Fonseca*, 795 F.2d at 1106 ("Federal law governs cases where, as here, the FDIC in its corporate capacity sues to collect assets acquired from the receiver of an insured bank.") (citations omitted); *F.D.I.C. v. Cardona*, 723 F.2d 132, 136 (1st Cir.1983) ("[T]he federal statute of limitations in 28 U.S.C. § 2415(a) applied as soon as FDIC acquired the notes ..." from the failed bank.); *F.D.I.C. v. Barrera*, 595 F.Supp. at 897 ("[T]he questions presented in [an] action in which the FDIC is a party in [its] corporate capacity are governed by federal and not state law.") (citations omitted); and *F.D.I.C. v. Bird*, 516 F.Supp. at 649 ("[W]hen, as in the instant case, [the FDIC] exercises authority granted it under 12 U.S.C. § 1823 and purchases assets from the receiver of a closed insured bank, its rights shall be determined by reference to federal law.") (citations omitted). However, "state limitations are nonetheless relevant in determining a claim's viability at the time the

federal agency gains eligibility to sue. If the state statute of limitations has expired before the government acquires a claim, it is not revived by transfer to a federal agency." *F.D.I.C. v. Hinkson*, 848 F.2d 432, 434 (3rd Cir.1988). *See also F.D.I.C. v. Former Officers & Directors of Metro. Bank*, 884 F.2d at 1309 n. 4 ("It is settled law that state limitations statutes are relevant in determining a claim's viability at the time the federal agency acquires the claim. If the state statute of limitations has expired before the government acquires a claim, that claim is not revived by transfer to a federal agency.") (citation omitted); *F.D.I.C. v. Consolidated Mortgage*, 805 F.2d 14, 17–18 n. 4 (1st Cir. 1986) ("If the applicable local statute of limitations has not yet cut off a bank's claim when the FDIC acquires the claim, then the FDIC may sue at least within the period remaining under the local limitations statute and, possibly, within six years from acquisition under 28 U.S.C. § 2415 (1983), although the precise application of this latter remains undecided.") (citations omitted); *F.D.I.C. v. Consolidated Mortgage and Finance Corp.*, 691 F.Supp. 557, 560 (D.P.R.1988) ("FDIC cannot assert the six-year federal limitations statute if at the time it acquired the claims they were already time barred under local law.") (citations omitted); and *F.D.I.C. v. Bird*, 516 F.Supp. at 650 ("[I]f any of the claims which FDIC acquired on March 31, 1978 ... were barred by a relevant Puerto Rican limitations statute at that time, such claims remain barred.") (citations omitted). As further indicated by the Court in *Hinkson*:

> [O]nce the federal government or its agency acquires from a private party a contractual claim not barred at that point by a state statute of limitations, 28 U.S.C. § 2415(a) requires that suit be brought by the government within six years. The federal statute of limitations preempts a state statute of limitations after the claim comes within control of the federal government. ...
>
> ....
>
> [A] contractual claim not barred by a state statute of limitations at the time it is ac-

---

**4.** It should be noted that this part of our prior findings is not being contested by the plaintiff.

quired by a federal agency must be sued on by the government within six years of the date it acquires the claim. Once a viable claim is acquired by the government, a state statute of limitations neither reduces nor increases the six-year period allowed by 28 U.S.C. § 2415(a).

*F.D.I.C. v. Hinkson*, 848 F.2d at 434–35. *See also F.D.I.C. v. Former Officers & Directors of Metro. Bank*, 884 F.2d at 1309 ("[T]he statute of limitations [contained in 28 U.S.C. § 2415(a)] begins running upon acquisition of the claim by the federal government upon FDIC's appointment as receiver.") (footnote omitted); and *F.D.I.C. v. Cardona*, 723 F.2d at 134 ("When the FDIC purchases the assets of a bank, it should not be barred from bringing an action if a private party acquiring the same assets in the same manner would not be barred.... [The] FDIC should have at least the six years provided in 28 U.S.C. § 2415(a) in which to bring its action.").

■ Since it is uncontested that the Construction Loan Agreement involved in this case became due and payable on July 29, 1975; and that the FDIC acquired the notes subject to this action on March 31, 1978, i.e., before July 29, 1978, when the Puerto Rico's 3–year statute of limitations was to expire, the "FDIC acquired an additional six years under the federal statute of limitations to commence an action on these notes, or until March 31, 1984." *F.D.I.C. v. Consolidated Mortgage and Finance Corp.*, 691 F.Supp. at 561 (citations omitted). "Because the claim had not been barred by state law at the time of assignment to the FDIC, the federal statute of limitations applies here." *F.D.I.C. v. Hinkson*, 848 F.2d at 434–35.

[T]he collection and foreclosure action was not barred when the FDIC purchased the note[s] at issue on March 31, 1978. If the collection and foreclosure action is viewed as an action for money damages brought under the mortgage contract, the FDIC had at least six years from 1978 to collect and foreclose in the instant case. As the complaint here was filed on [November 4,

1981], there can be no dispute that the FDIC filed this suit within the six year limitation of 28 U.S.C. § 2415(a).

*F.D.I.C. v. Roldan Fonseca*, 795 F.2d at 1109.

Therefore, the complaint filed by the FDIC on November 4, 1981 to recover on the aforementioned obligations was timely filed, and the partial judgment entered by this Court on May 17, 1988 dismissing the second cause of action of the second amended complaint as to defendants and guarantors Pedro A. Parrilla, Margarita Rodríguez Morales, José Luis Collazo, Isabel M. Arostegui, Roberto Busó Aboy and Marilyn García Cárdenas, must be set aside.

## II. MOTION TO DISMISS COUNTERCLAIMS

### A. THE ISSUE

■ FDIC contends that the counterclaims asserted against it sound in tort and therefore, must be dismissed for lack of jurisdiction over the subject matter. Specifically, it argues that the counterclaimants failed to name the correct party, i.e., the United States, and file an administrative claim as required by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680 ("FTCA"). Further, the counterclaim is barred by the malicious prosecution exception to the FTCA and prejudgment interest and punitive damages are not recoverable pursuant to 28 U.S.C. §§ 2680(h) and 2674, respectively. The counter-claimants, without refuting the citations of authority cited by the plaintiff in support of its motion to dismiss the counterclaims, argue that the counterclaims are based on contract and not on tort. After reviewing the counterclaims, together with the facts of this case, we disagree with counter-claimant's position.

### B. FACTS AND APPLICABLE LAW

According to the counter-claimants, the FDIC acted with malice in filing the complaint in this case, knowing that there was no cause of action against them.[5] *See* Counter-

---

5. As clearly indicated by plaintiff, "[b]y contrast to the allegations of the counterclaim, the affirmative defense cited by defendants for monies

paid into and received by the FDIC is a proper defense (if proven) and is not challenged by [FDIC's] motion to dismiss." Plaintiff's Reply

claims (docket Nos. 123 and 126). Based on this, they are claiming economic, moral, and punitive damages, in addition to prejudgment interest, costs and attorneys fees. They allege that "the counterclaims are *clearly* based on contract damages suffered by counterclaimants." Motion in Opposition to Motion to Dismiss Counterclaims at page 5 (docket No. 184). However, a simple reading of the counterclaims is sufficient to conclude that the claim sounds in tort and not contract. As a matter of fact, there is no mention whatsoever to a breach of contract on the part of the plaintiff. On the contrary, all references made are to tort, as demonstrated by the following excerpts from the counterclaims: "Counterclaimants ... have been damaged by plaintiff's *tortious acts.*"; "The damages suffered by counterclaimants are both economic and moral.... [They] have now had to live for years with the possibility of a huge judgment and financial ruin due to the *tortious acts* of plaintiff."; "The damages described ... are the result of the over acts and/or negligence of plaintiff. Plaintiff as a *tortfeasor* is bound by law to repay counterclaimants for the damages suffered." Counterclaims at paragraphs 5, 6 and 8 (docket Nos. 123 and 126) (emphasis ours).

Borrowing the words of the Court in *Sarraga v. Girod Vela & Co., Inc.*, 649 F.Supp. 11 (D.P.R.1986):

Although Section 1819(4) of the Federal Deposit Insurance Act vests the FDIC with the capacity to "sue and be sued", this section is not an unqualified waiver of sovereign immunity since Section 2679(a) of Title 28 U.S.C. specifically provides that the authority of any federal agency to sue and be sued cannot be construed to authorize suits against federal agencies which are cognizable under Section 1346(b) of Title 28 U.S.C. It is axiomatic that claims for money damages which sound in tort must be brought against the United States and not against the FDIC....

....

Memorandum in Support of FDIC's Motion to Dismiss Counterclaims at page 8, footnote 6 (docket No. 193).

**6.** It should be noted that although the counterclaimants do not specify whether their counterclaims are against FDIC-corporate or FDIC-receiver, the complaint in this case was filed by FDIC-corporate. Since FDIC-receiver is not a party in this case, it follows that the counterclaims are against FDIC-corporate.

Pursuant to Sections 2680(a) and 2680(h) of the Federal Tort Claims Act, Title 28 U.S.C. claims against the United States based upon the exercise, performance, or even abuse of discretion, and claims based upon misrepresentation or deceit are expressly barred.... [Counter-claimants] here concede [implicitly] that if their action were to sound in tort it would be barred, but instead they typify their action as contractual in nature. The difficulty with this argument is that the evidence in this case denies the existence of a contract or any commitment between [counter-claimants] and the FDIC. Thus, since we construe [counter-claimants'] claim[s] against the FDIC as sounding in tort, the same [are] barred under the provisions of Sections 2680(a) and 2680(h) of Title 28 U.S.C.

Moreover, [counter-claimants'] claim[s] [are] also barred due to [their] failure to exhaust administrative remedies. It appears that [counter-claimants] did not file an administrative claim with the FDIC regarding the alleged facts subject of this action.

Title 28 U.S.C. § 2675(a) establishes as a prerequisite to maintaining a suit against the United States under 28 U.S.C. § 1346(b) (Federal Tort Claims Act) that a plaintiff present notice of his or her claim to the appropriate federal agency.... Section 2675 is more than a mere statement of procedural niceties and requires that jurisdiction exist at the time of the filing of the complaint.... Therefore, the claims against the FDIC in its corporate capacity ... must be dismissed.

*Id.* at 12–13 (citations omitted).[6] *See also* 28 U.S.C. § 2674 ("The United States ... shall not be liable for interest prior to judgment or for punitive damages.").

Accordingly, the counterclaims filed against the FDIC by Constructora Río Oro, Inc., Pedro and Margarita Parrilla, José Luis Collazo, Isabel Arostegui, Roberto Busó

**550**

Aboy, and Marilyn García Cárdenas, must be dismissed for lack of subject matter jurisdiction.

### III. CONCLUSION

In view of the above, plaintiff's Motion to Set Aside Judgement ... (docket Nos. 206, 209, 210, 216, and 219) is hereby **GRANTED,** and the partial judgment entered by this Court on May 17, 1988 (docket No. 204) dismissing the second cause of action of the second amended complaint as to defendants Pedro A. Parrilla, Margarita Rodríguez Morales, José Luis Collazo, Isabel M. Arostegui, Roberto Busó Aboy and Marilyn García Cárdenas, is **VACATED AND SET ASIDE.**

Furthermore, plaintiff's Motion to Dismiss Counterclaims (docket Nos. 178, 193, and 208) is also **GRANTED,** and the counterclaims filed by Constructora Río Oro, Inc., Pedro and Margarita Parrilla, José Luis Collazo, Isabel Arostegui, Roberto Busó Aboy, and Marilyn García Cárdenas (docket Nos. 123 and 126), are hereby **DISMISSED.** Plaintiff's request for a hearing on its motion to dismiss counterclaims (docket Nos. 178, 193, and 208) is hereby **DENIED AS MOOT.**

Judgment will be entered accordingly.

IT IS SO ORDERED.